IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**YOLANDA CARTER**   **PLAINTIFF**

**V.**   **CASE NO. 3:18-cv-891-DPJ-JCG**

**ANDREW SAUL,** *Commissioner of*   **DEFENDANT**
*Social Security*

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Yolanda Carter seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her application for a period of disability, disability insurance benefits under Title II of the Social Security Act, and supplemental security income under Title XVI of the Social Security Act. The Commissioner of Social Security has filed a Motion for Summary Judgment (ECF No. 11), Ms. Carter has filed a Response (ECF Nos. 13, 14), and the Commissioner a Rebuttal (ECF No. 15). Having considered the submissions of the parties, the record, and relevant law, the undersigned recommends that the decision of the Commissioner be affirmed because substantial evidence supports the Commissioner's conclusions regarding Ms. Carter's ability to adapt and manage.

## BACKGROUND

Ms. Carter filed an application for a period of disability and disability insurance benefits on August 17, 2015 and an application for supplemental security income on October 15, 2015. In both applications, she alleged disability beginning April 24, 2015 due to back problems, neck problems, Chiari malformation, diabetes, high

blood pressure, hip pains, and depression. Ms. Carter's claims were administratively denied through a decision by an administrative law judge (ALJ) dated February 2, 2018. (ECF No. 10, at 17-39). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review. *Id.* at 5-11. Ms. Carter timely filed a Complaint in this Court.

Ms. Carter was forty-eight years of age at the time of the September 2017 administrative hearing. *Id.* at 27, 123. She lived with her son, who was then ten years of age. *Id.* Ms. Carter completed two years of college and obtained an associate degree in business administration. *Id.* at 27, 92. Ms. Carter worked at a casino for seventeen years. *Id.* at 123-24, 179. She started in a dealer position and was promoted to a casino gambling monitor. *Id.* at 92, 137. She last worked in 2011. When the ALJ asked Ms. Carter what problems prevented her from working, Ms. Carter responded, "[b]ad crying spells; depressed; panic attacks. Just don't like being around people. . . . I have problems with my left shoulder, my left hip, my back, and my knee." *Id.* at 125.

The ALJ utilized the five-step sequential process found in 20 C.F.R. §§ 404.1520, 416.920 and concluded that Ms. Carter was not disabled according to the Social Security Act's definition. A claimant meets the Social Security Act's definition of disability if: (1) the claimant is not presently engaged in substantial gainful activity; (2) the claimant has a severe, medically determinable, physical or mental impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities and meet the duration requirement; (3) the

claimant's impairment or combination of impairments meets or equals an impairment contained in the listings of impairments of Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1; (4) if disability cannot be found based on a listing in Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant from doing any other work, considering the claimant's residual functional capacity (RFC), age, education, and past work experience.

The claimant has the burden through the first four steps. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Once the claimant shows that she can no longer perform her previous work, the burden shifts to the Commissioner to show that there is other work existing in significant numbers in the national economy that the claimant can perform. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the Commissioner meets the burden at step five, the claimant must then prove that she is not able to perform other work. *Id.*

At step one, the ALJ determined that Ms. Carter had not engaged in substantial gainful activity since the alleged onset date of April 24, 2015. (ECF No. 10, at 23). At step two, the ALJ found that Ms. Carter suffered from the following severe impairments: degenerative disc disease with radiculopathy, major depressive disorder, personality disorder, anxiety, adhesive capsulitis, and obesity. *Id.* The ALJ determined that Ms. Carter's hypertension, diabetes mellitus (type II), hypothyroidism, sinusitis, gastroesophageal reflux disease without esophagitis, and Chiari malformation were not severe impairments. *Id.*

At step three, the ALJ found that Ms. Carter did not meet the standard of a listed impairment. *Id.* at 24. Specifically, the ALJ considered whether Ms. Carter's impairments satisfied Listing 1.04 (disorders of the spine), Listing 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). *Id.* at 24-25.

The ALJ then assessed Ms. Carter's RFC. He concluded that Ms. Carter was able to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following limitations:

- She is limited to occasionally lifting fifteen pounds and frequently lifting ten pounds.
- She can walk and stand for three hours in an eight-hour day, for twenty minutes at a time, and sit for six hours in an eight-hour day.
- She can occasionally stoop and climb but cannot crouch, kneel, or crawl.
- She can push and pull less than ten pounds with her left upper and lower extremities but is not to operate foot controls with left lower extremity.
- She can occasionally lift overhead with the left upper extremity.
- She is to have no interaction with the general public and only occasional interaction with supervisors and coworkers.
- She is able to concentrate for two-hour periods; understand, remember, and carry out simple instructions; perform simple, routine tasks, and occasional detailed tasks.
- She is to have no crowds of ten or more in her immediate workspace.

*Id.* at 26.

At step four, the ALJ determined that Ms. Carter was not able to perform her past relevant work. *Id.* at 32. At step five, the ALJ considered the testimony of a vocational expert and found that Ms. Carter could still perform work that was available in significant numbers in the national economy. *Id.* at 33. The vocational expert testified that Ms. Carter could work as a small parts assembler, bench assembler, and electronics worker. *Id.* The ALJ concluded that Ms. Carter was not

disabled and not entitled to disability benefits and supplemental security income at any time from her alleged disability onset date of April 24, 2015 through February 18, 2018, the date of the ALJ's decision.

## STANDARD OF REVIEW

This Court will only review the Commissioner's denial of benefits to determine if "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton,* 209 F.3d at 452. Ms. Carter asserts that "[t]he sole issue is whether the Commissioner's denial of a period of disability, disability insurance benefits and Supplemental Security Income is supported by the substantial evidence of record." (ECF No. 12, at 2).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). Conflicts in evidence are the purview of the Commissioner and are not for the Court to resolve or review de novo. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

## ANALYSIS

### A. Substantial Evidence Supports the ALJ's Conclusion Regarding Ms. Carter's Ability to Adapt and Manage

5

Ms. Carter challenges the ALJ's conclusion that Carter had experienced no limitation in adapting or managing. Ms. Carter urges that there is not substantial evidence to support this finding because it is "inconsistent with both medical opinion evidence and the medical evidence of record." (ECF No. 12, at 3). Ms. Carter contends that the ALJ erred by failing to include significant functional limitations in the RFC, and in the hypothetical question posed to the vocational expert, to account for Ms. Carter's "frequent and spontaneous crying spells." (ECF No. 15, at 5).

The ALJ performed the psychiatric review technique described in 20 C.F.R. §§ 404.1520a and 416.920a and 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Part of this process required the Commissioner to assess the "B criteria" to determine the degree of functioning in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ found that Ms. Carter had moderate limitations in understanding, remembering, or applying information; in interacting with others; and with regard to concentrating, persisting, or maintaining pace. (ECF No. 10, at 25). The ALJ concluded that Ms. Carter had experienced no limitation in adapting and managing herself. *Id.*

Adapting or managing oneself

> refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself

> independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E(4).

The ALJ provided the following explanation for finding Ms. Carter experienced no limitation in adapting or managing:

> As for adapting or managing oneself, the claimant has experienced no limitation. Although the claimant initially reported in a Function Report dated October 2015, that she had difficulties with bathing and dressing, in subsequent Function Reports dated November 20, 2015 and February 19, 2016, the claimant indicated she had no difficulties with performing these tasks (Exhibits B5E, B6E, and B10E). In both Function Reports, the claimant reported being able to prepare simple meals and sandwiches on a daily basis. She is able to do laundry, drive as needed, and shop for clothes and groceries. (Id. and Exhibit B10E). Therefore, the undersigned finds no limitation in this area.

(ECF No. 10, at 25).

To support her argument that she does have limitations in adapting and managing that should have been accounted for in the RFC, Ms. Carter relies on the report of psychological consultant David Powers, Ph.D.; the report of consultative psychological examiner, Jan Boggs, Ph.D.; the report of Ms. Carter's clinical social worker, Constance Willis; and records from Weems Community Health Center (Weems).

Ms. Carter emphasizes that at the initial determination level, consultative examiner Dr. Powers responded "yes" when asked whether Ms. Carter had adaptation limitations. *Id.* at 181. After responding "yes," however, Dr. Powers completed an "additional explanation" section that provided:

7

> Fortunately, there are not indications of a severe mental problem of any kind. There are no suggestions of significant social, concentration or intellectual disabilities. Moderate restrictions exist as indicated. Residual functioning allows for routine, repetitive work. The claimant can complete an 8 hour work day and a 40 hour work week without significant psychologically related interruptions. The claimant can concentrate for at least 2 hour periods without extended breaks and is capable of doing simple work and possibly detailed tasks. The claimant can adapt to routine changes in the workplace.

*Id.* at 182.

The ALJ specifically cited Dr. Powers' opinion that Ms. Carter had adaptation limitations. *Id.* at 30. The ALJ then cited Dr. Powers' conclusion that Ms. Carter "can adapt to routine changes in the workplace." *Id.* The ALJ's mental RFC assessment is not inconsistent with Dr. Powers' in important respects because neither included limitations in the RFC for adapting and managing, and both found that Ms. Carter was capable of working. That the ALJ did not give more weight to the portion of Dr. Powers' opinion specifically highlighted by Ms. Carter does not equate to a lack of substantial evidence. The responsibility for determining a claimant's RFC is reserved to the Commissioner, and at the hearing level, that assessment is entrusted to the ALJ.

Ms. Carter emphasizes portions of the opinion of consultative examiner Dr. Boggs. Dr. Boggs indicated in his January 11, 2016 report that Ms. Carter began to cry during the examination and that it "was necessary to pause a couple of times in order for Ms. Carter's tears to subside enough to proceed with the examination." *Id.* at 518. Dr. Boggs noted that Ms. Carter was agitated and "continued to cry, which of course made her communication more difficult." *Id.* at 519. Dr. Boggs concluded

8

that Ms. Carter "was upset today and in this state would not be able to sustain routine job tasks, but I do not know how often this is the case." *Id.* at 520. Ms. Carter does not quote this entire sentence in her briefing, instead representing that Dr. Boggs found "in this state (she) would not be able to sustain routine job tasks . . . ." *Id.* at 520.

The ALJ gave no weight to Dr. Boggs' opinion that Ms. Carter would not be able to sustain routine job tasks. *Id.* at 30. The ALJ did not err in this regard because a conclusion that a claimant cannot work is not a medical opinion entitled to deference but rather a legal conclusion reserved to the Commissioner. *See Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003). Still, Ms. Carter argues that "Dr. Boggs' observations do not reflect an isolated incident; rather, his observations reflect an on-going situation throughout the record." (ECF No. 15, at 4-5). Ms. Carter references medical records from Weems for this proposition, urging that she "reported crying spells occurring on a daily basis at times." *Id.* at 4.[1] Ms. Carter emphasizes that Ms. Willis, her clinical social worker, opined that Ms. Carter was limited because she "has spontaneous crying spells for no reason." (ECF No. 10, at 534).

---

[1] A review of the Weems records shows that Carter's crying spells were discussed during numerous appointments. *Id.* at 539-41, 565-73, 575-91, 594-95, 599-600. On a few occasions, Carter cried during the appointment. *Id.* at 541, 558, 587. Sometimes, Carter reported daily or frequent crying spells. *Id.* 590, 565, 567, 571, 575, 584-85, 586, 590. Other times, Carter reported she cried once or twice per week. *Id.* at 572-80, 600. Sometimes, Carter reported that her crying spells had increased 568-69, 575, 594. Other times, Carter reported that they had decreased. 566-70, 574, 591, 595, 599.

The ALJ did not ignore Ms. Carter's crying spells, however. He addressed them, observing that

> mental health treatment records indicate the claimant appeared very tearful and depressed on April 30, 2015 after receiving notification that her initial disability application had been denied. On exam, her speech pattern and mood were depressed and she reported having auditory hallucinations (Exhibit B7F). On subsequent visits, the claimant was noted as being very distant and upset. She was regressing with increased crying spells, mood swings, isolation, and reported not eating or sleeping well. She was becoming easily irritated and "super" mad off and on.

(ECF No. 10, at 28).

The ALJ ultimately gave more weight to "[m]ore recent mental health records from Weems," which

> reveal[ed] the claimant's appearance, attitude, and mood were appropriate during visits. She answered questions appropriately and her thought processes were logical. She was oriented in all spheres and her reliability was reported as "good". Her insight and judgment were intact. In October 2016, the claimant reported her medications were working well. Her moods were stable and she was not having any dangerous thoughts or psychosis. In December 2016, she reported her sleep had improved. She complained of having a poor appetite, but on examination, had gained one pound. In August 2017, the claimant was reported to be stable on established medications.

*Id.* at 30.

Dr. Boggs examined Ms. Carter on one occasion, witnessed her crying on this occasion, and acknowledged not knowing how often the crying occurred. The ALJ had the benefit of the entire record. That the ALJ relied more heavily on more recent records from Weems, where Ms. Carter had treated on many occasions since 2014, was within his purview. The examining relationship and length of treatment are proper considerations. *See* 20 C.F.R. §§ 404.1527 and 416.927. The ALJ is

10

entitled to determine the credibility of medical experts and weigh their opinions accordingly. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Ms. Carter argues that at most, more recent Weems records reflect "a temporary remission," which is not medical improvement. (ECF No. 15, at 5). The ALJ was under no obligation to so conclude. While a finding of non-disability is not compelled when there is evidence of remission or symptom-free intervals, neither is a finding of disability. *See Frank v. Barnhart*, 326 F.3d 618, 619-21 (5th Cir. 2003); *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *7 (W.D. Tex. June 7, 2013).

The ALJ also considered a mental impairment questionnaire completed by Ms. Willis, Ms. Carter's clinical social worker. *Id.* at 533-35. Ms. Carter highlights the portion of Ms. Willis' report where Willis opined that Carter was limited by a poor ability to deal with work stress. *Id.* at 534. The ALJ gave this portion of Ms. Willis' opinion little weight, reasoning that [c]ounseling notes from December 2015 indicate the claimant had improved and February 2016 notes reveal no substantial problems relating to others or with her concentration." *Id.* at 31. Again, the ALJ gave more weight to more recent Weems records, specifically noting that they revealed "that, while receiving treatment, the claimant reported her meds were working better and her moods had approved." *Id.* Impairments that reasonably can be remedied or controlled by medication or treatment are not disabling. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988).

Ms. Carter does not mention that the ALJ gave substantial weight to Ms. Willis' opinion that Ms. Carter "does not want to work. She was non-compliant with

11

therapists and refused to engage in social settings." *Id.* at 31. The ALJ credited these conclusions as "consistent with the longitudinal record." *Id.*

While Ms. Carter has highlighted evidence that suggests she has difficulty adapting and managing, other evidence cited by the ALJ supports the ALJ's determination that Ms. Carter does not have such limitations. This Court does not resolve conflicts in the evidence. The evidence cited by the ALJ – including more recent Weems records and Ms. Willis' opinion that Ms. Carter does not want to work, was non-compliant with therapists, and refused to engage in social settings – constitutes substantial evidence supporting the ALJ's finding that Ms. Carter does not have limitations in adapting and managing.

### B. The ALJ Applied the Factors for Evaluating Medical Opinions

Carter alleges that the ALJ did not apply the medical opinion evaluation factors found in 20 C.F.R. §§ 404.1527 and 416.927. The factors are (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. "Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form." *Pierce v. Colvin*, No. 3:14CV971-FKB, 2016 WL 5415827, at *10 (S.D. Miss. Sept. 28, 2016) (citing *Wiltz v. Commissioner*, 412 F. Supp. 2d 601, 608 (E. D. Tex. 2005)). Instead, "mindful of a general duty of deference to the Commissioner's decisions, reviewing courts should examine the substance of an ALJ's decision, rather than its form." *Pierce,* 2016 WL 5415827, at *10 (citing *Wiltz,* 412 F. Supp.2d at 608).

12

The ALJ considered medical evaluation factors. The ALJ cited the governing regulations, indicating his familiarity with it and intent to apply it. The ALJ acknowledged that Dr. Powers was a psychological consultant. The ALJ explained that he did not fully accept Dr. Powers' opinion because portions of the opinion were not consistent with the longitudinal record and "evidence presented through the hearing level . . . more clearly represents the claimant's limitations. (ECF No. 10, at 30).

The ALJ acknowledged that Dr. Boggs was a psychological evaluator. The ALJ explained that he gave no weight to Dr. Boggs' opinion that Carter would not be able to sustain routine tasks because Dr. Boggs was a one-time consultative examiner and his opinion was based on Ms. Carter's subjective complaints. *Id.* at 30. The ALJ found the remainder of Dr. Boggs' opinion consistent with the record. *Id.*

The ALJ acknowledged Ms. Willis' specialization as a certified clinical social worker and gave partial weight to her opinion that Plaintiff could not deal with stress because it conflicted with subsequent treatment notes. *Id.* at 31. The ALJ gave substantial weight to other portions of Ms. Willis' opinion, finding them consistent with the longitudinal record. Carter's allegation that the ALJ did not apply medical opinion evaluation factors has no merit.

### C. The ALJ's Credibility Assessment is Supported by Substantial Evidence

The ALJ concluded that Carter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

13

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 27. Carter submits that the ALJ's conclusion contradicts the opinion of Dr. Powers, who answered "yes" to the following question when evaluating Carter's mental impairment: "Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone?" (ECF No. 10, at 180; ECF No. 15, at 8-9). State agency medical consultant Louis Saddler M.D., who assessed Carter's physical limitations, also answered "yes" to this question. (ECF No. 10, at 204). According to Carter, the ALJ was required to explain why he rejected the consultants' opinions regarding the consistency of Carter's statements with the objective medical evidence. (ECF No. 15, at 9).

Carter cites no authority for the proposition that an ALJ must provide an explanation if he disagrees with a consultant's opinion regarding the credibility of a claimant's statements. The Fifth Circuit has routinely held that the ALJ is in the best position to assess a claimant's credibility. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994); *Villa v. Sullivan*, 895 F .2d 1019, 1024 (5th Cir.1990); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir.1983). An ALJ's assessment of a claimant's credibility is accorded great deference. *Ramirez v. Colvin,* 606 F. App'x 775, 779 (5th Cir. 2015) (citing *Newton,* 209 F.3d at 459). An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination. *Falco,* 27 F.3d at 164.

As discussed, the ALJ ultimately gave greater weight to more recent Weems records indicating that Ms. Carter's medications were working well, and her moods were stable. (ECF No. 10, at 30). The ALJ gave substantial weight to many of Ms. Willis' opinions, including Willis' opinions that Carter does not want to work, was non-compliant with therapists, and refused to engage in social settings. *Id.* at 31. The ALJ compared Carter's subjective complaints to her activities of daily living, finding it significant that Carter could prepare meals, go to doctor's appointments, organize medications, comply with treatment, shop for groceries, drive, read, do laundry, visit family two to three times a week, attend church, homeschool her son, help him with homework, and attend his football practices and games.

The ALJ compared the record evidence and gave specific reasons for finding that Ms. Carter's statements concerning the intensity, persistence, and limiting effects of her condition were not entirely credible. The ALJ's credibility determination is thus supported by substantial evidence and is conclusive.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed and Carter's appeal dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven

> days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 9th day of January, 2020.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE